UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDRE DIXON,

        Plaintiff,

v.

LOUIS DEJOY,

        Defendant.

Civil Action No. 19-2998 (TSC)

### MEMORANDUM OPINION

Plaintiff Andre Dixon, proceeding *pro se,* has sued the U.S. Postal Service's ("USPS") Postmaster General for the Capital Metro Area, now Louis DeJoy, for violations of the Family and Medical Leave Act ("FMLA") allegedly carried out by USPS officials. The parties have cross-moved for summary judgment. For the reasons set forth below, the court will GRANT Defendant's Motion for Summary Judgment, ECF No. 34, and DENY Plaintiff's Cross-Motion for Summary Judgment, ECF No. 37.

### I.    BACKGROUND

**A.  Procedural history**

Plaintiff, a USPS employee for over 30 years, filed this case in October 2019. Compl. ¶ 3. He claims Defendant violated FMLA in three ways during 2017. First, USPS allegedly denied him a promotion because he used FMLA leave to obtain treatment for stress, anxiety, and depression. Compl. ¶¶ 1, 5–6. Plaintiff claims that those mental health problems were the result of his supervisors' treatment of him in retaliation for him seeking union representation after experiencing unfair treatment in the workplace. *Id.* ¶¶ 5–6. Second, he contends that USPS placed him in Leave Without Pay ("LWOP") status despite having approved his FMLA leave.

*Id.* ¶ 19. And third, he claims that his supervisors "indirectly forced [him] to perform duties of a higher pay grade," *id.* ¶ 5, and "modif[ied]" his "working hours and schedule" in retaliation for taking FMLA leave, *id.* ¶ 27.

This is the second round of summary judgment motions. The first time, the court granted Defendant's motion with respect to Plaintiff's third claim—"that his supervisors indirectly forced him to perform duties of a higher pay grade, modified his working hours and modified his work schedule in retribution for taking leave"—but denied the motion in all other respects, and denied Plaintiff's cross-motion in full. Order, ECF No. 28. In explaining its decision, the court specifically noted Plaintiff's failure to comply with Local Rule 7(h) and Federal Rule of Civil Procedure 56, which require that a motion for or opposition to a summary judgment be accompanied by a statement asserting which material facts are or are not disputed, with corresponding citations to the record. Tr. of January 31, 2022 Status Hr'g at 8, ECF No. 30. The court had previously warned Plaintiff that failure to do so could result in the court "treating the Post Office's facts as conceded" and "granting [its] motion for summary judgment." *Id.* (citing prior warning in Order, ECF No. 23). Plaintiff was told that any future summary judgment briefing must "respond to the Post Office's Statement of Undisputed Facts paragraph by paragraph," explaining any disagreement with those proffered facts and citing evidence. *Id.* at 13. The court told Plaintiff that if he "fail[ed] to provide support for [his] position or fail[ed] to respond," it would "treat the Post Office's version of events of the facts as conceded, and grant any renewed summary judgment motion at that time." *Id.* at 14.

Plaintiff did not heed that warning. The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation omitted). To dispute a fact, "the non-movant must rely on evidence—i.e., its opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial." *Rochon v. Lynch*, 139 F. Supp. 3d 394, 401 (D.D.C. 2015) (quotation omitted), *aff'd*, 664 F. App'x 8 (D.C. Cir. 2016). Plaintiff has again failed to identify any disagreement with the specific facts set forth in Defendant's Statement of Material Facts Not in Genuine Dispute, ECF No. 34-1 ("SMF"), much less cite evidence for that disagreement. And he has not proffered a statement of his own to support his cross-motion for summary judgment.[1] Consequently, the court relies mainly on Defendant's SMF in setting forth the relevant facts.

B. <u>Undisputed facts</u>

In June 2017, USPS posted a job vacancy for the Supervisor Customer Services Specialist position at a post office located in Greenbelt, Maryland. SMF ¶ 6. The hiring process was overseen by Dawn Johnson, Greenbelt's Postmaster, but Delante Mouton, her supervising Manager, Post Office Operations, had authority as the "concurring official" to confirm or deny the hiring decision. *Id.* ¶ 9. Plaintiff was interviewed for the position on July 1, 2017, and on

---

[1] Plaintiff attached ten exhibits to his combined cross-motion and opposition. ECF No. 36-1. Seven of the ten exhibits are messages between Plaintiff and other individuals reflecting his efforts to seek advice and relief for his grievances. *Id.* at Exs. 1, 2, 5–9. The remaining three are USPS forms reflecting certain assignments Plaintiff received during 2017. *Id.* at Exs. 3, 4, 10. But Plaintiff's only citation to those exhibits is in reference to his claim that Defendant modified his working schedule in retaliation for using FMLA leave, *see* Memo. in Support of Pl.'s Cross-Mot. for Summary Judgment and Opp'n to Def's. Mot. for Summary Judgment at 7–8, ECF No. 36 ("Opp'n")—a claim on which the court has already awarded summary judgment to Defendant, *see* Order, ECF No. 28, and on which Plaintiff has not requested reconsideration. Moreover, Plaintiff's exhibits do not contradict Defendant's statement of undisputed facts, so provide no basis for rejecting Defendant' proffered facts.

July 6 Johnson verbally offered him the job. *Id.* ¶ 11–12. Afterward, Johnson conferred with Mouton regarding Plaintiff's selection, and Mouton advised her to "ensure that she did all appropriate due diligence" to confirm that Plaintiff "truly met all of the qualifications." *Id.* ¶ 15.

Before deciding whether he would concur with or reject Johnson's selection, Mouton reviewed Plaintiff's "Absence Analysis" documents for 2016 and 2017. *Id.* ¶ 16. An Absence Analysis, also known as "PS Form 3972,"

> provides detailed information regarding an employee's absences from work, including (but not limited to) reflecting dates the employee took leave, the type of leave taken (e.g., annual leave, sick leave), the hours charged to each leave type, whether the leave consisted of leave without pay ("LWOP"), whether the leave was scheduled or unscheduled, and whether the leave was FMLA-protected leave.

*Id.* ¶ 4. Mouton discovered that "between January 7, 2017, and Plaintiff's interview on July 1, 2017, Plaintiff had incurred approximately 12 unscheduled absences that were not FMLA-protected absences." *Id.* ¶ 13 (emphasis removed); *see id.* ¶ 17.

 "Mouton was concerned that, because Plaintiff had many unscheduled absences that were not FMLA-related absences, Plaintiff would have equally unreliable work attendance if awarded the Greenbelt Supervisor Position." *Id.* ¶ 18. Because the Greenbelt Post Office is "allotted only one supervisor and one postmaster . . . regular, reliable attendance was a critical requirement for a candidate to successfully perform the duties" of that position. *Id.* ¶ 10. Given Plaintiff's attendance issues, therefore, Mouton denied his selection for the position, and Johnson called Plaintiff to rescind the offer. *See* Def's. Ex. 3 at 6, ECF No. 34-3; Compl. ¶ 11.

Over the next few months, Plaintiff took several FMLA-protected leave days. FMLA permits eligible employees to take up to 12 weeks of leave each year because of certain family or medical exigencies, like the birth of a child or a serious health condition. *See* 29 U.S.C. § 2612(a)(1). Employees may be required to submit documentation supporting their need for

leave to their employer. *Id.* § 2613(a). In May 2017, Plaintiff requested, and USPS found him eligible, to take FMLA-protected "leave once every four months, four days per episode, for his health." SMF ¶ 5. As relevant here, Plaintiff took FMLA-protected leave on July 15, August 19, and November 18, 2017.[2] *See id.* ¶¶ 29–31.

FMLA-protected absences from work "may consist of unpaid leave." 29 U.S.C. § 2612(c). USPS accordingly does not automatically pay its employees on FMLA-protected leave. Rather, it uses a separate process for requests for paid sick leave when employees are "incapacitated for the performance of duties because of illness, injury, pregnancy and confinement, and medical (including dental or optical) examination or treatment." SMF ¶ 22 (quoting USPS Employee Manual § 513.11). "An employee requesting FMLA-covered time off . . . must satisfy the documentation requirements for sick leave . . . in order to receive paid leave during the absence." *Id.* ¶ 25 (quoting Employee Manual § 513.533). "Except for unexpected illness or injury situations, sick leave must be requested on PS Form 3971 and approved in advance by the appropriate supervisor." *Id.* ¶ 22 (quoting Employee Manual § 513.331). If the paid sick leave period requested is fewer than three days, a supervisor may require "medical documentation or other acceptable evidence of incapacity for work," without which "the absence may be charged to annual leave, LWOP, or AWOL." *Id.* ¶¶ 23–24 (quoting Employee Manual §§ 513.36, 513.365).

When USPS approved Plaintiff's FMLA-protected leave in 2017, it reminded him that he would still need to satisfy the "[a]pplicable conditions for use of paid leave" as set forth in the

---

[2] These dates are the only ones reflecting both FMLA-protected leave and LWOP status in Plaintiff's 2017 Absence Analysis. *See* Def.'s Ex. 12 at 2–3. They are thus the only potential dates relevant to Plaintiff's allegation that USPS "choosing not to pay [him]" while "under FMLA" (on unspecified days) was "a violation." Compl. ¶ 19.

Employee Manual.  *Id.* ¶ 26.  Upon reviewing Plaintiff's "increased number of unscheduled absences" in 2017, Plaintiff's supervisor Vincent L. Clark decided to exercise his discretion to require "substantiation of incapacitation before approving a request from Plaintiff for paid sick leave."  *Id.* ¶¶ 27–28.  Consequently, when Plaintiff requested paid sick leave on July 15, August 19, and November 18, 2017, Clark required him to provide evidence that he was incapacitated for each of those days.  *Id.* ¶¶ 29–32.  Plaintiff refused.  *Id.*; *see also* Compl. ¶ 19.  As a result, his absences were designated as LWOP for all three days.  SMF ¶¶ 29–31.

## II.   LEGAL STANDARD

Summary judgment is appropriate where there is no disputed genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322–23.  "A genuine issue of material fact exists if the evidence, viewed in a light most favorable to the nonmoving party, could support a reasonable jury's verdict for the non-moving party." *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014) (citing *Hampton v. Vilsack*, 685 F.3d 1096, 1099 (D.C. Cir. 2012)).  "Where the nonmoving party is proceeding *pro se,* courts in this jurisdiction will construe the non-moving party's filings liberally." *Cunningham v. U.S. Dep't of Just.*, 40 F. Supp. 3d 71, 82 (D.D.C. 2014) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  "However, a *pro se* litigant still has the burden of establishing more than 'the mere existence of a scintilla of evidence' in support of his position." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation does not suffice, *Morris v. McCarthy*, 825 F.3d 658, 674 (D.C. Cir. 2016), nor do conclusory, "unsupported allegations or denials," *Rochon*, 139 F. Supp. 3d at 401.

## III.   ANALYSIS

The undisputed facts in this case compel judgment against Plaintiff.  His claims that USPS interfered with or retaliated against him for the exercise of his rights under FMLA are

fatally rebutted by the evidence that USPS had legitimate reasons for both rescinding his Greenbelt Supervisor job offer and denying his requests for paid sick leave. Defendant is therefore entitled to summary judgment in full.[3]

### A. Legal framework

Under the FMLA, it is illegal for an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the Act, 29 U.S.C. § 2615(a)(1), or to "in any other manner discriminate against any individual for opposing any practice made unlawful" by the statute, *id.* § 2615(a)(2). Correspondingly, an employer

> may be held liable for violating the FMLA under two distinct claims: (1) an interference claim under § 2615(a)(1), in which the employer has restrained, denied, or interfered with the employee's substantive rights under the Act, and (2) a retaliation claim under § 2615(a)(2), in which the employer has taken adverse action against the employee because the employee took leave or otherwise engaged in activity protected by the Act.

*Roseboro v. Billington*, 606 F. Supp. 2d 104, 107–08 (D.D.C. 2009).

Interference and retaliation claims require different showings. An interference claim requires "facts sufficient to show, among other things, that (1) [the plaintiff] was entitled to take leave because he had a 'serious health condition,' (2) he gave his employer adequate notice of his intention to take leave, and (3) his employer denied or otherwise interfered with his right to take leave." *Hodges v. D.C.*, 959 F. Supp. 2d 148, 155 (D.D.C. 2013). "To prove retaliation under FMLA, [the plaintiff] must 'show that []he engaged in a protected activity under this statute; that []he was adversely affected by an employment decision; and that the protected

---

[3] Defendant also argues that Plaintiff's non-selection and two of his LWOP-designated, FMLA-protected leave dates fall outside of the statute of limitations. *See* Renewed Mot. for Summary Judgment at 3–6, ECF No. 34-2. Because the court concludes that Defendant is entitled to summary judgment under FMLA in any event, it does not reach the issue whether some of Plaintiff's claims are time-barred.

activity and the adverse employment action were causally connected.'" *Cooper v. D.C.*, 279 F. Supp. 3d 156, 166–67 (D.D.C. 2017) (quoting *Gleklen v. Democratic Congressional Campaign Comm., Inc.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000)).

Plaintiff's Complaint expressly articulates an interference claim, but not a retaliation claim. *See* Compl. ¶ 27 ("Defendant interfered with Plaintiff's FMLA rights" in violation of "29 U.S.C. § 2615(a)(1)"). However, his allegations that USPS officials rescinded his Greenbelt job offer and denied his requests for paid sick leave because he had used FMLA-protected leave more closely resemble retaliation claims. And his briefing contends that "Defendant retaliated and interfered against" him. Opp'n at 7. Ultimately, however, under either claim there is no genuine dispute of material fact and judgment must be granted to Defendant as a matter of law.

B. **Job offer rescission**

Beginning with the rescission of the job offer, Plaintiff has cited no evidence that Defendant denied his right to take FMLA leave, or that USPS officials rescinded the offer because Plaintiff had taken FMLA leave in the past. To the contrary, the undisputed evidence in this case indicates that Plaintiff's non-selection was because of his "many unscheduled absences that were not FMLA-related absences." SMF ¶ 18. Those non-FMLA absences caused concern that "Plaintiff would have equally unreliable work attendance if awarded the Greenbelt Supervisor Position, which would make him unable to effectively perform the functions" of that job. *Id.* That uncontested, legitimate reason for Plaintiff's non-selection undercuts any claim that it was an act of interference or retaliation under FMLA.

Plaintiff argues that he "was actively exercising protected FMLA" when the offer was rescinded, apparently referring to the fact that he had been approved to take FMLA leave during 2017. Opp'n at 7. But his mere eligibility for FMLA leave around the time the offer was rescinded does not establish the required causal connection between his taking that leave and the

adverse action against him. *See Long v. Endocrine Soc'y*, 263 F. Supp. 3d 275, 283 (D.D.C. 2017) ("While temporal proximity between an employment action and protected activity is evidence of pretext, it alone is not enough . . . . Thus, the fact that Plaintiff was on FMLA leave when she was fired, by itself, is not enough to get past summary judgment."). Defendant is therefore entitled to summary judgment with respect to its rescission of Plaintiff's job offer.

C. **Denials of paid sick leave**

As for Plaintiff's denied requests for paid sick leave, undisputed evidence also precludes any claim of interference or retaliation. As explained above, FMLA allows employers to require that employees produce evidence of family or medical emergencies. 29 U.S.C. § 2612(a)(1). Pursuant to his request, Plaintiff was approved for one four-day period of FMLA leave every four months to address a "Chronic Condition Req[uiring] Treatment," Def.'s Ex. 13 at 7–8, which he describes as mental health issues including "stress, anxiety, and depression" that warranted him seeking professional help, Compl. ¶¶ 6, 19. In Plaintiff's view, the documentation he provided to obtain that approval also satisfied his obligation to, at Clark's request, submit any additional evidence in support of his request for paid sick leave. *Id.* ¶ 19. He therefore contends that the fact that his requests were denied for failure to submit additional documentation is evidence that those denials were in retaliation for him exercising his FMLA rights. *Id.* ¶¶ 18–20.

Here, too, however, Plaintiff has not marshalled sufficient evidence to support his claim at the summary judgment stage. To begin, he identifies no causal connection between the denials of his paid sick leave requests and the exercise of his FMLA rights. As already noted, temporal proximity alone is not enough. *See Long*, 263 F. Supp. 3d at 283. Moreover, the denials were in keeping with USPS internal procedures, which require certain evidence for paid sick leave in addition to documentation provided for FMLA approval. SMF ¶ 25. Plaintiff's

case illustrates at least one possible rationale for that policy.  Documentation of chronic issues like mental health challenges might establish that Plaintiff needs to take a certain amount of time off every year to remain productive in the long run.  But it might not demonstrate that he is "incapacitated for the performance of duties" or actually receiving "medical . . . examination or treatment" on any given day—as internal policies state an employee may be required to prove in order to be paid during sick leave.  *Id.* ¶¶ 22–23.  And USPS procedures expressly set forth the consequences for refusal to provide that additional documentation: designation of an absence as LWOP.  *Id.* ¶ 24.  In any event, there is no evidence that the denials of Plaintiff's paid sick leave requests were caused by or otherwise interfered with his taking FMLA leave.  The court will therefore grant summary judgment to Defendant with respect to this issue as well.

## IV.  CONCLUSION

For these reasons, the court will GRANT Defendant's Motion for Summary Judgment, ECF No. 34, and DENY Plaintiff's Cross-Motion for Summary Judgment, ECF No. 37.  A corresponding Order will accompany this Memorandum Opinion.

Date: August 9, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge